# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 24, 2012

## FRANK WARREN CURRAH v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Moore County**
**No. 985[1]      Robert Crigler, Judge**

_____

**No. M2011-01871-CCA-R3-PC - Filed March 28, 2012**

_____

The petitioner, Frank Warren Currah, appeals the post-conviction court's denial of his petition for post-conviction relief from his convictions of sexual exploitation of a minor and aggravated stalking and resulting effective sentence of eight years in confinement.  On appeal, the petitioner contends that he received the ineffective assistance of counsel.  Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, and JEFFREY S. BIVINS, JJ., joined.

Andrew Jackson Dearing, III, Shelbyville, Tennessee, for appellant, Frank Warren Currah.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Hollynn Eubanks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

Our review of the trial transcript reveals the following facts: In 2008, the then seventeen-year-old victim was a high school junior and a cheerleader.  The petitioner, who

---

[1]Parts of the record reflect that the post-conviction trial court number is 985, and other parts reflect that the number is 1073.  However, 1073 was the trial court number for the petitioner's original trial and sentence agreement hearing.

was twenty-eight years old, managed computers for the Moore County School System and had an office in the victim's high school. During the school year, the victim began receiving anonymous gifts at school. First, a florist delivered two dozen roses to the victim. Then the victim found a Christmas card in her locker. The card contained two one-hundred-dollar bills. On Valentine's Day, the victim found a Victoria's Secret gift card in her locker with a note that said, "'You're the most beautiful and attractive girl. I hope nothing I ever do makes you uncomfortable. Happy Valentine's Day.'" Officer Justin Grogan of the Moore County Sheriff's Department (MCSD), who was the resource officer at the high school, reviewed video surveillance in the school and discovered that the petitioner put the gift card in the locker. Detective Mike Rainey of the MCSD interviewed the petitioner, and the petitioner did not deny that he gave the gifts to the victim. The petitioner consented to a search of his residence and personal computer. Tennessee Bureau of Investigation (TBI) Agent Douglas Williams found more than one hundred photographs of minors participating in sexual acts on the computer's hard drive. An expert in computer forensics testified for the petitioner at trial that after the police seized the petitioner's computer, numerous files were modified. He also testified that it was impossible to know who downloaded the images and that the petitioner may not have known the images were on the hard drive. The petitioner testified that he did not know how or when the images were downloaded and that he never had any personal contact with the victim.

The jury convicted the petitioner as charged of sexual exploitation of a minor, a Class B felony, and aggravated stalking, a Class E felony. Subsequently, the petitioner retained new counsel and entered into a sentencing agreement with the State, waiving his right to appeal in exchange for an effective eight-year sentence. Less than one year later, the petitioner filed a petition for post-conviction relief, claiming that he received the ineffective assistance of counsel. The post-conviction court appointed counsel, and counsel filed an amended petition. The amended petition alleged that the petitioner received the ineffective assistance of counsel at trial because counsel failed to communicate with him; failed to investigate his case and interview witnesses; was not prepared for trial; did not explain trial procedures to him; did not show him statements or evidence relating to his case; did not file pretrial motions; and did not request that the State stipulate to the computer images. The petitioner also argued in the amended petition that he received the ineffective assistance of counsel at sentencing because his post-trial attorney failed to communicate with him adequately regarding his waiving his motion for new trial and right to appeal, which resulted in his not entering into the sentencing agreement knowingly, voluntarily, and intelligently.

At the evidentiary hearing, the petitioner testified that he retained trial counsel to represent him. Trial counsel met with the petitioner four times for a total of six hours before trial. After the petitioner's arrest, he attempted suicide and spent five days in a psychiatric hospital. However, trial counsel never filed a motion for an expert to evaluate the

-2-

petitioner's competency. Trial counsel showed the petitioner the State's proposed list of witnesses. They discussed some of the witnesses and trial strategy, but trial counsel did not review discovery materials with him. They never discussed Agent Williams's testimony, and the petitioner did not think counsel interviewed Agent Williams. The petitioner recommended a computer expert for the defense, and trial counsel met with the expert. The petitioner acknowledged that the expert "educated" trial counsel about downloading files. Trial counsel and the petitioner reviewed some of the computer images from the petitioner's hard drive for about thirty to forty minutes, and trial counsel filed a motion to suppress the images. Detective Rainey testified at the suppression hearing, and the trial court denied the motion to suppress. The State offered to agree to the petitioner pleading guilty in exchange for a five and one-half-year sentence, but the petitioner refused to accept the offer. On the morning of trial, trial counsel insisted that the petitioner accept the offer, but the petitioner still refused.

The petitioner testified that he requested that trial counsel strike some of the potential jurors from the panel but that trial counsel did not challenge anyone. Detective Rainey gave testimony at trial that was inconsistent with his testimony at the suppression hearing, but trial counsel did not cross-examine the detective about the inconsistencies. Trial counsel failed to familiarize himself with computers adequately before trial and repeatedly misused the word "downloading" during the trial. The petitioner said that trial counsel told him that when the jury saw the downloaded images, "they're going to hang [you]." However, to the petitioner's knowledge, trial counsel never approached the State about stipulating to the images. The petitioner said that he prepared thirty to forty questions for trial counsel to ask during the trial but that counsel "left most of them out." The petitioner testified at trial, but counsel did not question him adequately.

The petitioner testified that after the jury convicted him, trial counsel developed some health problems. The petitioner said he and his family decided to hire a new attorney because trial counsel was "not too responsive to my letters to come see me." The petitioner's post-trial attorney visited him in jail three times. Each of their first two meetings lasted about one hour, and their third meeting, which occurred the day before the scheduled sentencing hearing, lasted at least three hours. During the meetings, they discussed the petitioner's case. Trial counsel had filed a motion for new trial, and post-trial counsel had filed an amended motion for new trial.

The petitioner testified that the State offered him an eight-year sentence if he would agree to waive his motion for new trial and direct appeal. The petitioner said that the day before he was to be sentenced, post-trial counsel told him that his obtaining a new trial was "a long shot" and that his appeal probably would be frivolous. Post-trial counsel did not explain that the petitioner was entitled to a direct appeal and told him about a case similar

to the petitioner's case in which the defendant received the maximum sentence and no alternative sentencing. The petitioner said that post-trial counsel also told him that "appellate briefs start at $10,000" and that the petitioner could reduce the proposed eight-year sentence by fifteen percent for good behavior. The petitioner later learned that he was ineligible for the conduct credits.[2] The petitioner said that he was "tapped out financially," that the agreement "seemed like it was the best thing to do at the time," and that he accepted the State's sentencing offer because "I was operating under the belief that my motion for new trial was not going to happen and the appeal would be frivolous and that I was going to get the max."

On cross-examination, the petitioner testified that he had wanted trial counsel to strike an elementary school teacher from the jury panel because he used to work with the teacher and had "issues" with her. The petitioner named several other jurors who knew him from the community. He said the jurors may have had issues with him and should not have served on the panel. The petitioner said that after his suicide attempt, he was able to assist trial counsel with his case; however, he was "feeling out of [his] own," was under a lot of stress, and was in need of cognitive therapy.

The petitioner's trial counsel testified for the State that he had been practicing law for over thirty years and had participated in 1,000 to 1,500 cases prior to the petitioner's case. Trial counsel spent hours talking with the petitioner and researching law. He filed a motion for discovery, a motion to dismiss, and a motion for continuance. He was concerned about the seizure of the petitioner's computer and filed a motion to suppress the downloaded images. Trial counsel approached the State about a stipulation to the images, but the State refused. Trial counsel talked with the petitioner about computers and shared discovery with him. Trial counsel said that he gave the petitioner a copy of the TBI's computer forensic report and that the petitioner "went through it pretty much with a fine-tooth comb." Trial counsel said he thought the petitioner attempted suicide because the petitioner's life "came crashing down around him." Trial counsel said he was "concerned about [the petitioner's] mental state at one point" but that the petitioner helped him prepare for trial and "seemed to be okay."

Trial counsel testified that he and the petitioner discussed hiring a defense expert. Counsel interviewed the expert and filed a motion to allow the expert to inspect the petitioner's computer hard drive. Counsel spoke with some of the officers from the MCSD.

_____

[2]On the petitioner's original judgment of conviction form, the box for "Child Predator 100%" was checked, which prevented the petitioner from receiving any sentence reduction credits. At the conclusion of the petitioner's post-conviction evidentiary hearing, the parties and the trial court agreed that the petitioner was entitled to the credits and that the judgment form should be amended to correct the error.

Although counsel did not speak with Agent Williams, he had the TBI agent's report and knew what the agent was going to say at trial. The State offered to allow the petitioner to plead guilty to exploitation of a minor and aggravated stalking in exchange for a five and one-half-year sentence. Although the petitioner would have been eligible for release after serving thirty percent of the sentence, he was not interested in the offer. Trial counsel said that he did not remember "frank objections" about any potential jurors but that "there might have been one that he discussed with . . . me."

On cross-examination, trial counsel testified that he had handled a few sexual exploitation of a minor cases previously and that he spent ten to fifteen hours with the petitioner. Trial counsel recalled that at the motion to suppress hearing, Detective Rainey testified that he turned on the petitioner's computer. However, Detective Rainey testified at trial that another officer turned on the computer. Despite the inconsistency, trial counsel did not consider Detective Rainey to be lying. Counsel thought the petitioner was capable of understanding the petitioner's actions and was competent. Counsel said the petitioner "stood firm" in denying that he downloaded the images.

The petitioner's post-trial counsel at sentencing testified for the State that he had been licensed to practice law since 2006 and practiced criminal law almost exclusively. The petitioner's father retained post-trial counsel. Post-trial counsel read the trial transcript three times and spent at least two hours with the petitioner during their first two visits. He said that they were able to communicate and that the petitioner was "borderline brilliant." Post-trial counsel said he explained the petitioner's range of punishment and consecutive sentencing and tried to find "some way" for the petitioner to receive alternative sentencing. However, counsel never found a case in which a defendant, who had downloaded more than one hundred sexually explicit images of children, received alternative sentencing. He said he told the petitioner that accepting the State's sentencing offer would "effectively end this case." He said he also would have explained the post-conviction process and "what it takes in order to have a successful postconviction hearing." Counsel said that on the day of the sentencing hearing, he and the petitioner "spent a considerable amount of time" going over the acceptance forms, which outlined the State's offer.

On cross-examination, post-trial counsel testified that he told the petitioner that the petitioner had a right to a direct appeal. He said that he thought an appeal would have been frivolous but that he did not share his opinion with the petitioner. Regarding the State's sentencing offer, post-trial counsel told the petitioner that he would receive an eight-year sentence and that "there was always a chance that he could receive up to 15 percent."

At the conclusion of the hearing, the post-conviction court summarized the evidence regarding trial counsel's performance, noting that trial counsel met with the petitioner and

filed a motion for discovery and a motion to suppress. The court also noted that according to the petitioner, trial counsel told the petitioner about possible punishments, showed him a witness list, reviewed some of the computer images with him, presented a plea offer to him, and advised him to accept the offer. The post-conviction court stated that although the petitioner thought counsel failed to cross-examine Detective Rainey properly, counsel did not consider the inconsistencies in the detective's testimony to have affected his credibility. The post-conviction court noted that despite the petitioner's claim about certain jurors improperly sitting on the panel, the jurors did not testify at the evidentiary hearing. The post-conviction court specifically accredited trial counsel's testimony that he approached the State about stipulating to the computer images, that he prepared for the petitioner's case, and that he developed a defense strategy with the petitioner.

The post-conviction court also summarized the testimony regarding post-trial counsel's performance. The post-conviction court found that post-trial counsel thoroughly advised the petitioner about his right to a sentencing hearing and advised him about the ramifications of his accepting the State's sentencing offer. The post-conviction court concluded that neither attorney rendered the ineffective assistance of counsel.

## II. Analysis

The petitioner's entire argument on appeal consists of the following three sentences:

> Trial counsel failed to adequately prepare, interview and call witnesses told to him by his client. Further trial counsel failed to adequately prepare his case for Trial and adequately communicate and interview witnesses. . . . Further counsel at sentencing failed to properly advise Petitioner of the plea agreement which resulted in Petitioner waiving his Motion for New Trial and appeal.

The State argues that the petitioner did not receive the ineffective assistance of counsel and that he accepted the State's sentencing offer knowingly, intelligently, and voluntarily. We agree with the State.

To be successful in a claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

-6-

Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Notably,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Regarding the petitioner's receiving the ineffective assistance of trial counsel, the post-conviction court found that trial counsel met with the petitioner, filed a motion for discovery and a motion to suppress, showed the petitioner a witness list, advised him about possible punishments, reviewed the computer images with him, prepared for his case, and developed a defense strategy. The petitioner has failed to explain on appeal what more trial counsel should have done. Moreover, although the petitioner claimed at the evidentiary hearing that trial counsel failed to interview witnesses or strike certain jurors from the jury

panel, the petitioner failed to present the testimony of the omitted witnesses or improper jurors at the hearing. <u>Black v. State</u>, 794 S.W.2d 752, 753 (Tenn. Crim. App. 1990). Therefore, he has failed to show that trial counsel's performance was deficient or that he was prejudiced by any deficiency.

As to the petitioner's claim that he received the ineffective assistance of post-trial counsel, the petitioner is effectively requesting a delayed appeal. <u>See</u> <u>Thomas W. Yelton v. State</u>, No. M1999-00597-CCA-R3-PC, 2000 Tenn. Crim. App. LEXIS 885, at *22 (Nashville, Nov. 9, 2000). However, the post-conviction court concluded that post-trial counsel advised the petitioner about his right to a sentencing hearing and the ramifications of accepting the State's sentencing offer, including his waiving his right to appeal his convictions. We note that the petitioner has included a transcript of the hearing in which he agreed to accept the State's sentencing offer. Our review of the transcript shows that the State announced the agreement to the trial court, stating that the petitioner would receive an effective eight-year sentence to be served at one hundred percent. In addition, the State announced that the petitioner had executed a handwritten waiver of his right to a direct appeal as part of the agreement, and counsel for the petitioner stated that the petitioner's amended motion for new trial would be "stricken." The trial court asked the petitioner if he understood the agreement announced by the State and his attorney, and the petitioner said yes. The trial court also asked the petitioner if he understood that he was waiving his right to a sentencing hearing and his right to appeal his convictions, and the petitioner again answered yes. Finally, the trial court asked the petitioner if he had signed his handwritten waiver and if he had entered into the sentencing agreement freely and voluntarily. The petitioner answered both questions in the affirmative. We agree with the post-conviction court that the petitioner did not receive the ineffective assistance of post-trial counsel and that he entered the sentencing agreement knowingly, intelligently, and voluntarily. The petitioner is not entitled to relief.

## III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE